UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.....................................
. 
**CORDIUS TRUST,** .
.
                          Plaintiff, .
**v.** .   C.A. NO. 05-10759-WGY
.
**DONALD D. KUMMERFELD,** .
.
                          Defendant. .
.....................................

### DEFENDANT'S REPLY TO OPPOSITION TO MOTION TO STAY ENFORCEMENT OF JUDGMENT

Cordius' opposition fails to refute or even address the central points Mr. Kummerfeld relies upon in seeking to prevent a sheriff's sale of his house: first, that Mr. Kummerfeld has no significant assets other than the home from which Cordius is trying to evict him; and second, that there is no reason to think the home's value will decrease while Mr. Kummerfeld's fully-briefed appeal to the Second Circuit is pending. Rather than grapple with these points, Cordius relies on speculation, distortions of the underlying record, and a misstatement of the legal standard governing Mr. Kummerfeld's request for a stay of proceedings. Cordius even attempts to argue – all evidence and common sense to the contrary – that losing a house after 35 years of ownership would not be an "irreparable harm." Given that all Cordius seeks at the end of the day here is to collect on a judgment for money, and that the only asset potentially available to satisfy this judgment is going nowhere, the Court should grant Mr. Kummerfeld's motion and allow him to keep his house while his appeal is pending.

**A.      Cordius Misstates the Record**

1. Cordius suggests that Mr. Kummerfeld cannot be trusted with continued ownership of his house because he has been involved in "fraudulent activity," has attempted to evade court

B3021973.3

orders and has withheld financial information from this Court.  *See*, *e.g.,* Plaintiff's Opposition ("Opp.") at 1 and 16.  Cordius even goes so far as to insinuate that Mr. Kummerfeld -- who has a long record of public service and distinguished professional achievement -- may be lying about whether his wife's mental condition caused or contributed to the couple's financial woes.  *See id.*, at n. 2.  These allegations are utterly baseless.

2.  As an initial matter, Cordius does not dispute that Mr. Kummerfeld had nothing to do with the "high yield investment" program underlying this litigation and never received any benefit from it.  Indeed, while Cordius is attempting to obtain a 700% or higher rate of return in connection with that program, Mr. Kummerfeld already has lost his entire life's savings and now stands to lose his house in connection with his wife's misguided business activities.

3.  With respect to Mrs. Kummerfeld's mental condition, it is undisputed that she has been diagnosed by nationally recognized specialists as having a serious medical condition that has affected her cognitive abilities and judgment.  Although Cordius trumpets the existence of a criminal proceeding against Mrs. Kummerfeld, Opp. at n. 2, it does not dispute that this proceeding was initiated before Mrs. Kummerfeld's diagnosis and that she has never been sentenced, evidently due to the government's conclusion that she is not competent.

4.  With respect to compliance with court orders, Cordius is flatly wrong when it claims that Mr. Kummerfeld "more than doubled the encumbrance" on his home on March 25, 2004 in order to evade an imminent court decision.  Opp. at 16.  As Cordius is well aware, Mr. Kummerfeld refinanced his home in March of 2004 in order to obtain a lower interest rate on his mortgage, not to deplete the property's equity.  Supplemental Declaration of Donald Kummerfeld ("Supp. Decl.") at ¶ 2.  Moreover, while the amount of the mortgage did increase slightly – from approximately $650,000 before the refinancing to $700,000 afterward – the

actual net proceeds from this refinancing ($34,762.87) were utilized to pay legal fees and other expenses primarily related to the refinancing. *Id.* In any event, Mr. Kummerfeld has not made any attempt to encumber his home since judgment entered for Cordius last year; he is under a court order not to do so; and he has sworn to this Court that he will not do so.[1]

5. Cordius also offers no evidence to back up its speculation that Mr. Kummerfeld is somehow misstating or withholding financial information. For example:

   a. Cordius suggests that Kummerfeld Associates, Inc. ("KAI") has hundreds of thousands of dollars in artwork and other property available to satisfy the judgment in this case and that Mr. Kummerfeld is not being honest when he says that such property cannot be "readily liquidated." Opposition at 15. Tellingly, however, Cordius has never made any attempt to seize or attach that property and, in fact, has rejected offers to have the property conveyed to it. Supp. Decl. ¶ 3.

   b. Cordius also speculates that KAI and Mrs. Kummerfeld must have received assets in connection with the disbandment of certain oil and gas partnerships in 2004 that previously had generated modest income of approximately $2,000 annually. Opp. at 18. In fact, however, KAI and Mrs. Kummerfeld did not receive any proceeds from the disposition of these assets. Supp. Decl. ¶ 4.

Obviously, the parties are before the Court now because the Brewster property at issue is Mr. Kummerfeld's *only* significant asset. Just as obviously, Mr. Kummerfeld seeks a stay without bond because he is no position to post a bond for anywhere near the $2 million-plus needed to satisfy Cordius' judgment. Nothing in the Opposition changes these facts.

---

[1] Cordius also argues that the Kummerfelds acted inappropriately by recording a homestead declaration in 2004. Opp. at 19. By definition, however, the Kummerfelds were simply exercising a legal right, one they might have lost altogether had they given Cordius a deed to be held in escrow during the pendency of the appeal. Although Cordius suggests that executing such a deed would have been the only "reasonable" way to prevent the Kummerfelds from increasing their mortgage, Opp. at 20, the record shows just the opposite: the Kummerfelds have been complying with a court order not to further encumber the property for the past year, and it would be impossible to increase the mortgage as a practical matter in any event now that the Barnstable County Sheriff has levied on the property.

**B.     Cordius Misstates the Applicable Legal Standard**

6.     In his original motion papers, Mr. Kummerfeld identified four factors that the Supreme Court has instructed district courts to consider when deciding a motion for a stay: (1) likelihood of success on appeal; (2) the prospect that the moving party will be irreparably injured absent a stay; (3) the prospect that the non-moving party will be substantially injured if a stay is granted; and (4) the public interest. In its Opposition, Cordius cites a Southern District of New York opinion for the proposition that a moving party "must objectively demonstrate" all four of these "requirements." Opposition at 8. In fact, the case upon which Cordius relies, *Morgan Guaranty Trust Co. v. Republic of Palau*, 702 F.Supp. 60, 65 (S.D.N.Y. 1988), stresses that each of these four factors "must, of course, be applied flexibly, according to the unique circumstances of each case. Thus, for example, where the latter three factors strongly favor interim relief, the court has required only that the petitioner demonstrate a 'substantial case on the merits,' even if ultimate success is not a mathematical certainty." *Id.*

7.     More to the point, the law governing this Court does not support the rigid test that Cordius urges. Neither the Supreme Court nor the First Circuit requires moving parties to "objectively demonstrate" all possible factors according to some mathematical formula. *See Hilton v. Braunskill*, 481 U.S. 770, 777, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1984) ("[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a rigid set of rules"); *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002) ("the nature and amount of the bond is entrusted to the discretion of the trial court").

8.     Here, the traditional stay factors strongly favor Mr. Kummerfeld:

a.     <u>Likelihood of Success on Appeal.</u> The Opposition's argument section contains a seven-page rehash of Cordius' appellate briefs. Mr. Kummerfeld already has

submitted and incorporated by reference his appellate brief, which demonstrates a "substantial case on the merits" even under the *Morgan Guaranty* standard.

b. <u>Irreparable Harm to Mr. Kummerfeld</u>. In his original motion, Mr. Kummerfeld explained that the Brewster cottage at issue here is the only house he owns, that it has great sentimental value to himself and his family, and that he intends to retire in Brewster. Mr. Kummerfeld further explained that he does not have sufficient assets to post a supersedeas bond and that he has concerns that, even if he prevails on appeal, Cordius will not be able to make him whole financially (to say nothing of replacing the property's sentimental value). In response, Cordius offers nothing more than an *ipse dixit* pronouncement that Mr. Kummerfeld "has failed to provide this Court with a sufficient basis to conclude that he would, in fact, be irreparably harmed absent a stay." Opp. at 14. Cordius also provides no information about who is behind the trust and offers no assurances about its ability to make Mr. Kummerfeld whole in the event of a successful appeal (a particularly salient point here given that a sheriff's sale of the property likely would be at a distress price). Instead, Cordius argues that any concerns about its financial wherewithall could be avoided if Mr. Kummerfeld were to provide a supersedeas bond. *Id.* at 16. That argument is nonresponsive and nonsensical.

c. <u>Irreparable Harm to Cordius.</u> The Opposition offers no explanation as to why Cordius needs to sell Mr. Kummerfeld's property now. As noted above, there is nothing in the record or the Opposition suggesting that the value of the property is being impaired or is likely to be impaired. Indeed, so long as these proceedings are pending, particularly with the sheriff having levied on the property already, there is no realistic prospect that Mr. Kummerfeld could "further increase the mortgage" or transfer the property. Opp. at 20.

d. <u>Public Interest.</u> Finally, and contrary to Cordius' argument, this motion is not an invitation for this court to "second guess" Judge Cote or any other judge. Now that Cordius is attempting to seize and sell Mr. Kummerfeld's Massachusetts property, this Court has an independent obligation to consider all the

B3021973.3                                          - 5 -

circumstances of this case. That includes consideration of the public interest determinations reflected in the Massachusetts statute preventing execution on judgment during the pendency of an appeal. Moreover, this Court also will be able to consider Mr. Kummerfeld's *current* financial situation and his record of compliance with Judge Cote's order that the property not be further encumbered.

WHEREFORE, the Court should schedule a hearing on this motion as soon as convenient for the Court to consider whether to stay proceedings without requiring Mr. Kummerfeld to post a supersedeas bond or, if a bond is to be required, what bond amount would be reasonable under the circumstances.

Respectfully submitted,

DONALD D. KUMMERFELD,
By his attorneys,

/s/ Jeffrey S. Follett
FOLEY HOAG LLP
Jeffrey S. Follett, BBO #564337
Michael Martin, BBO #653876
Foley, Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
*jfollett@foleyhoag.com*
Dated: April 22, 2005            (617) 832-1000